## ROSE *et al. v.* RICHMOND MINING CO.

### (*In the District Court of Eureka County, Nevada.*)

ADVERSE—THE FILING OF, SUSPENDS RIGHT TO ISSUE PATENT. The filing of a protest and adverse in the proper land office, against the application for a patent, suspends the right to issue patent, which, if issued pending the litigation upon such adverse, is void.

After adverse filed, the officers of the Land Office of the United States have no authority to take further action until shown by affirmative proof that no suit has been instituted to support the adverse.

SAME—FAILURE TO FILE IS A WAIVER OF RIGHT. If a senior locator permit another to locate upon the same ground and make application for patent, and file no adverse or protest, and the patent be issued to such junior locator, his title will hold, the failure of the first locator to file adverse being a waiver of his priority.

HENRY RIVES, J. This action was commenced upon the 21st day of October, A. D. 1873. The defendant filed its answer November 20th of the same year, and upon April 20, 1881, filed its amended answer.

Upon the complaint filed at the time of the commencment of the action, and the amended answer, the application for injunction was heard and this trial had.

The Albion Con. Mining Company having filed a petition of intervention on April 23, 1881, in which it claimed a right to intervene by reason of the facts in the petition set forth, viz: That since the commencement of this action it had purchased all the right and title of these plaintiffs, and therefore succeeded to their interests, and that these plaintiffs had now no right or interest in this action. The defendant moved to strike out the petition, which motion was granted with leave to the Albion Company to be substituted, as it had shown no ground to intervene, but was entitled to the option of permitting the action to proceed in the name of the original plaintiffs, or to be substituted. It chose to conduct the action in the name of the original parties.

The complaint sets forth: First, that the defendant is a corporation. Second, that "plaintiffs are, and ever since January 20, 1872, have been the owners of, seized and possessed of, the Uncle Sam mining claim, ledge, lode and deposit of mineral bearing ore, rock and earth." Third, that "defendant unjustly, and adversely to plaintiffs, claims an estate in, for and to said premises." Fourth, that the defendant has filed in the United States Land Office an application for a patent thereto, under the name of the St. George ledge and mine.

The answer admits the corporation, and that the application alleged had been made in the Land Office. It denies that the plaintiffs were ever the owners of, seized or in possession of the premises, or any part thereof. It alleges that the defendant is the owner, in possession, and entitled to the possession of said

premises; that since the commencement of this action it "has acquired title by patents from the government of the United States to all that portion of said mining ground in controversy," and claims ownership, possession and right of possession under said patents.

It was established by the evidence on behalf of plaintiff on this trial that "the Uncle Sam was located January 14, 1872, by Rose and two associates. The claim was made for 800 feet on the ledge by 200 feet wide. The act of Congress of 1866 (under which Rose located) gave to each locator 200 feet on the vein, and an additional 200 feet for discovery."

Rose and his associates did the required amount of work upon this claim so long as they owned it, and since their title has been owned by the Albion Company it has expended upon the claim several hundred dollars each year in excess of the amount required by law, up to date; and, so far as work, occupation and marking of boundaries is concerned, plaintiffs have performed all of those things required by the act of Congress of May 10, 1872, relative to mining claims. It was admitted throughout the trial that the Uncle Sam and all other locations owned by either party, and which were put in controversy in this proceeding, were a part of and upon the same great vein or lode. The Richmond Company therefore claimed, that as it had not only been discovered, but that many prior locations had been made upon this great lode, prior to the location of the Uncle Sam, that Rose had no right to take discovery claim, and further, in support of its position on this point, established that Phillips and Haskell had located the identical ground, now known as the Uncle Sam, in 1871, and had done considerable work thereon at or soon after their location. Phillips, who personally located it in 1871, testified that Rose first pointed out the ground to him, and that he (Phillips) made his location at a small hole where Rose had done work and exposed some galena ore. Phillips and Haskell, however, evidently abandoned their claim to this ground before Rose located the Uncle Sam. They having abandoned it, it became public domain again as fully as though they had never appropriated it, save possibly that an entire stranger might not (?) be permitted to take a bonus of 200 feet as a discovery claim; but the case is different with Rose, for when he located, it had again become·

public domain, and he having originally exposed the ledge at that point, and believing, as he testified he did, and doubtless as every miner in the district then did believe, that it had no part or parcel with any other ledge, why should he not locate and claim his discovery? Certainly there was no bad faith indicated, under the circumstances, in his doing so. Much evil would ensue were the Court to decide that locations wherein a discovery claim had been taken under the circumstances of this case were absolutely void. I think the rule in such instances should be that the claim is only bad *pro tanto*, and so long as the mistaken locator remained in possession, no one could legally enter his ground to locate his excess. It therefore follows, from these views, that the Uncle Sam location was not void for the mistake of Rose in taking 200 feet for discovery.

Having established the foregoing facts concerning the Uncle Sam, the plaintiffs rested their case, when the defendant, to maintain the issues on its part, offered in evidence United States patents to the Tip Top, St. George and Victoria claims.

To the admission of the Victoria, and especially to the St. George patent, the plaintiffs objected, on the ground that the St. George patent was void, for having been issued without authority of law, while a contest was pending in the United States Land Office concerning the ground embraced therein, and to the Victoria, because it had been acquired since the commencement of this action. The objection to the St. George was overruled and the patent admitted as evidence, because, so far as the evidence up to that point showed, there was nothing before the Court establishing that any valid protest had been made to the issuance of the patent; and the Victoria patent was also admitted and plaintiffs' objection overruled, because any defendant has a perfect right to acquire as many new titles as he can after a suit is commenced against him, and to put them all in evidence, and for the further reason, that it is not claimed that any protest was ever made against the issuance of the Victoria.

Plaintiffs excepted to these rulings. Defendant then introduced in evidence the notices of location of the Tip Top and Victoria claims, and, after establishing the correctness of certain maps showing the relative situations of all the claims mentioned in the case, put in some testimony tending to prove that Rose

had only claimed the Uncle Sam as being 106 feet wide at one end, instead of 200 feet, and there rested its case.

In regard to this latter point of his having only claimed the Uncle Sam as being 106 feet wide, it is unnecessary to give an opinion, because it was frankly admitted by all the counsel that any valid title on the great lode carried all of it *below the surface* and between the end lines. At this juncture the plaintiffs offered in evidence a properly authenticated copy of the proceedings in the United States Land Department, by means of which the Richmond Company obtained a patent to the St. George. Counsel for the Richmond Company vigorously opposed, and counsel for Rose ably advocated, its admission. The objections of the Richmond Company were overruled and the testimony admitted, counsel for the Richmond excepting.

Rose then testified that he had never abandoned or intended to waive his adverse claim and protest against the St. George; that he had delayed vigorous proceedings, because he had hopes of adjusting the controversy in some way with the Richmond Company, and gave good reasons for his hopes. Other testimony than that of Rose on this point was also introduced. Plaintiff also introduced testimony tending to show that the northeast corner stake of the Tip Top had once stood some twelve feet further east than where it now stands, and had remained in that position several years.

This embraced all the testimony of plaintiff in rebuttal which it is necessary to notice in order to fully determine this case.

The defendant then introduced some testimony tending to establish that Rose had actually intended to and did waive his protest and adverse claim. A good deal of testimony other than I have noticed was offered and admitted in evidence, but which bears too remotely upon the issue in this cause to merit reference.

From the testimony above referred to, and other that was received in evidence, I find as facts:

Those which were hereinbefore mentioned in regard to the Uncle Sam claim respecting the manner of its location, possession within established boundaries, and as to necessary work to date.

That the Richmond Company obtained from the Government a patent to the Tip Top location on the 30th day of April, 1874;

that this patent is admitted to be, in all respects, regular and valid; that a surveyor of the Richmond Company, in May, 1877, placed the northeast corner stake of said patented claim some ten or twelve feet further south and east than where the same is now admitted to stand; that such stake remained in that position until the year 1879, when it was removed to its present position.

There was no testimony as to where this stake stood in 1874, when the patent was issued, nor as to where it was placed by the mineral surveyor who made the original survey prior to application for the patent, and it is not denied but that the stake is now some ten or eleven feet further south and east than the calls in the patent would require it to be. Whether that stake was placed at the place at which it was seen in 1877 through mistake of the surveyor, or otherwise, does not appear, and because it stood beside a peculiar square rock (which latter is a "permanent object") but which is not mentioned in the calls of the patent, can make no difference. Unless the position of stakes prior to, or immediately after, issuance of a patent can be indubitably established, it would be too hazardous for Courts to permit such positions to control the course and calls in a Government patent, after three years had elapsed since its issue, because a patentee might be interested in moving them in a certain direction; for interested parties, opposed to a patentee, might have similar inducements to move them in an opposite direction, where they might remain for years, and, in case of the patentee's absence, or without his knowledge, he being in the vicinity, it would result, in some instances, in great loss or hardship. Even were such stakes improperly placed, with a patentee's knowledge, and through his own or his agent's mistake, it would be wrong in a Court to say, "You cannot be relieved from the effects of your mistake." It would be otherwise did the calls in the patent refer to what the authorities denominate "permanent objects," or even to stakes proven to have been placed at or about the time of application for, or issuance of, patent. Did the calls in the Tip Top patent refer to that peculiar square rock, it would undoubtedly control that corner; but not so, under the testimony in, and circumstances of, this case, and I shall therefore hold that the Richmond Company is bound only by the present position of

that stake, which I conclude to be at point " C " on the line running from " A " to " C," as shown on plaintiffs' exhibit " III."

The determination of this fact, however, is not necessary to the decision in this case, as will appear subsequently herein, and I only determine it in order that the case may be fairly presented on appeal in case it should be concluded by the Supreme Court that I am wrong as to the grounds upon which I finally decide.

I find, from the exemplified copy of the proceedings connected with the application of the Richmond Company for a patent to the St. George, that the application was made in the proper Land Office, August 1, 1873; that in due time plaintiffs protested and filed an adverse claim against said application; that they brought suit in the proper Court within the required time, and have prosecuted said action with due diligence, under the circumstances proven on the trial.

On the trial the Richmond Company strenuously contended, that because Rose and some other of the adverse claimants had not paid the five dollars required by law as a docket tax, that no action had been commenced in the thirty days required by the law of Congress of 1872, and that up to date no action would be deemed as having been commenced. The statutes of this State provide, that unless such fee be paid, no action shall be deemed to have been commenced, and, if defendant's position on this point is correct, it should have made affirmative proof in the Land Office of such fact before demanding its patent, and in this action it can only make such a plea available by pleading the same in abatement. No proof was made in the Land Office that no action had been commenced, and, in the absence of such affirmative proof, and notice of the same, and the Register's decision thereon, I think he (the Register) had no jurisdiction to proceed in the matter, or to issue a patent. In short, I am clearly of opinion that the St. George patent was issued without authority of law, while the land embraced in the application was reserved from sale as effectually as though there had been a special act of Congress excluding it, and that therefore it is also absolutely void.

In this connection it is but due to counsel to notice some positions taken in the closing argument, wherein it was contended that the St. George patent was void, because it was issued pending a protest against its issuance, and while this action remained

undetermined in this Court; that all acts of the officers of the Land Department, after the filing of the protest, were without authority and void. In these views I have already concurred. While contending that the patent was void, and the acts of the Land officers equally so, the eminent counsel claimed that it only lies in the mouth of the plaintiffs in this case to demand a judgment so declaring it. In this I cannot agree, for the reason, that it is equally the province of the Government to have it so declared, and, perhaps, of any citizen in an action *ex rel.*

The same counsel further demanded that this Court, in this character of action, should decree the defendant to be the trustee of the plaintiffs, holding this St. George title, or a portion thereof, for the benefit of plaintiffs. In the first place, no such trust could be declared in this character of action, because no facts justifying it have been pleaded by Rose or proven under his "implied replication;" and, in the second place, no trust can be declared or adjudged in a title that is absolutely void. Were a direct action to be brought for this purpose, and it should be shown, as in this case, that the patent was void, either by the pleadings or proof, there is no Court but would be compelled to dismiss the suit. What would it benefit a man to have a decree rendered to the effect that another held a void title in trust for him? Or a judgment that the defendant convey such void title? The same counsel, referring to the St. George and Victoria locations, claimed that there was "no proof that the Richmond Company had ever stuck a stake, or, in any proper or legal manner, made a valid location of either of these claims." While this is true as a matter of record in this case, and while it is also true that the notices of location of each of these claims is junior to that of the Uncle Sam, I am at a loss to see any force in such a position, in view of the well established doctrine of all of the Courts that a patent is *prima facie* evidence that all steps necessary to a valid and incontrovertible title have been taken by the patentee. The Supreme Court of the United States, and every State Court where this question has ever been presented, have held to this rule, without a single exception; and they have all held that the only two instances in which facts showing that all preliminary steps had not been taken regularly, is in the case where a plaintiff properly pleads and sets them forth in his complaint in an action different from this, and where a defendant

shall have pleaded them in defense of an action against him, brought by a patentee wherein the patent is declared on. In support of this latter position, I have only to refer to the decision of the eminent jurist who heard and determined the application for injunctions in the three Richmond-Albion cases, wherein he says:

"The action of *the Richmond Company* v. *the Albion Con. Company* in ejectment, relying upon the St. George patent as title, the Albion Company has fully answered, setting up all the claimed equities, and asking that the Richmond Company may be decreed to hold the St. George patent in trust. Under the code in this State, law and equity are blended, and a defendant may avail himself by answer of as many defenses as exist."

Further, referring to that case in which the Richmond Company, and not Rose or the Albion, is plaintiff, but in which they are defendants, he says: "The Richmond Company is seeking to recover this property from the Albion by force of this patent; it is its muniment of title, and I can discern no sufficient reason, upon principle or authority, for denying the defendant the right."

It will be observed from this reading that the Hon. Judge Rising treated the Albion Company as the defendants throughout the hearing upon the three applications for injunctions, and overlooked the fact, that in this case Rose, in the stead of the Albion Company, was a plaintiff, and a plaintiff in a statutory proceeding to quiet title, in which no equities on his part had been alleged, and it is a fundamental principle, that while a plaintiff may rebut a defendant's case by any testimony which would avoid the effect of defendant's case, still, that no Court, whether of law or equity, can go beyond the consideration of the facts alleged, or necessarily implied therefrom, in determining the character of relief to be rendered in the action. For a Court to do more would be tantamount to permitting a plaintiff to come into Court upon and set up one cause of action, and obtain relief upon an entirely different one. Any judgment of such a character would be set aside by any appellate Court upon the judgment roll alone. Were the St. George not void, no trust in favor of the plaintiffs herein could be decreed, because, under their complaint, no facts entitling them to such relief are alleged.

The error into which Judge Rising inadvertently fell when he treated and called the Albion (and Rose stands here as the

Albion Company) "the defendant" arose from the fact that the only case in which any testimony was offered before him was that of "*the Richmond Company*, plaintiff, v. *the Albion Con. Company*, defendant," and the testimony given therein was stipulated to have been given in the second case of the same title and in this one wherein Rose is plaintiff. In the two cases wherein the Albion Company are defendants, I presume that the equities in favor of the company have been fully pleaded as a defendant is entitled to plead them, and that when it comes to the trial of those cases in the near future, the jurisdiction of the Court will be ample to render such decree as the facts set up in the pleadings may justify. I do not desire, however, in passing upon this case, to be understood as even intimating that in those cases either party will "so assuredly be entitled to" any special character of "relief," nor can I dare to "express my convictions as to what must be the evident result upon the merits."

There remains but one question which I deem it necessary to pass upon, and that is in respect to the validity of the Victoria patent. It appears, from the notice of location, that the Victoria was taken up or located about December 7, 1872, and a patent therefor was issued February 28, 1880.

The Uncle Sam claim covers, so far as the maps show, and so far as Rose staked out his surface boundaries, but a small portion of the Victoria, but, however small, sufficient to entitle these plaintiffs to have protested against its issuance, to have commenced an action similar to this, and to have thus secured a stay of proceedings such as should have been had in the matter against the St. George, and, in consequence of which stay not having been had, has invalidated that patent. We find, however, that no protest or adverse claim was ever made against the issuance of the Victoria patent. We find it admitted that it covers a portion of this great lode immediately to the east or northeast of the Uncle Sam. It is also admitted that any valid patent on the lode carries the entire lode from wall to wall between the end lines of such patent. The Uncle Sam was located under the mining law of 1866, which gave to each locator 200 feet in length along the ledge, besides 200 feet additional for discovery. The mining laws of this district then in force, and respected among the miners, gave the same number of feet "on the ledge, besides 100 feet on each side thereof for mining

purposes." Under these laws, then, it is pertinent to inquire what was the extent of Rose's location. It will undoubtedly be admitted by any lawyer that the effect of his location, in the absence of a superior title, or the waiver or forfeiture of his own, was to entitle him to 800 feet in length of this great lode from quartzite to shale, and to "hold 100 feet on each side for mining and building purposes."

Rose's notice of location also claims "eight hundred (800) feet on this ledge, lode or mineral deposit," without any reference to the width or even the "100 feet on each side," and he very properly concluded at the time that he was entitled to the full width of the ledge and 100 feet on each side, by virtue and operation of the laws of the district and those of Congress then in force.

Under this state of facts, his claim would cover all of the Victoria with the entire lode between his end lines, and he was not only entitled to protest against the issue of that patent, but was obliged to do so, or his rights to all of the lode embraced within the Victoria would be waived and forever forfeited. This identical point is expressly decided in the case of *the Eureka Con. Company* v. *the Richmond M. Company*, where Judge Field uses this language:

"Each patent is evidence of a perfected right in the patentee to the claim conveyed; the initiatory step for the acquisition of which was the original location. If the date of such location be stated in the instrument, or appear from the record of its entry in the local Land Office, the patent will take effect as of that date, so far as may be necessary to cut off all intervening claimants, unless the prior right by virtue of his earlier location has been lost by a failure to contest the claim of the intervening claimant as provided in the act of 1872."

In the same case it is also decided that "where two parties are contending for the same property, the first in time in the commencement of proceedings for the acquisition of the title, when the same are regularly followed up, is deemed to be the first in right." In concluding the decision as to this subject, the Court said: "While, therefore, the general doctrine of relation applies to mining patents, so as to cut off intervening claimants * * the doctrine cannot be applied so as to cut off the rights of the earlier patentee under a later location where no opposition to

3

that location was made under the statute. The silence of the first locator is, under the statute, a waiver of his priority."

That case was affirmed by the Supreme Court of the United States in all respects, and is therefore the incontrovertible law.

The Richmond Company is, under the Victoria, the "earlier patentee under a later location." Rose was the "first locator," but, under the statute, he has been guilty of a "waiver of his priority," by not protesting against the issuance of the Victoria patent.

It follows, therefore, that the defendant is entitled to all of that portion of the lode embraced within the end lines of the Victoria.

This includes about two-thirds of the Uncle Sam, and all of the ore bodies, so far as I am aware, concerning which an injunction was issued in this case against the Richmond. This injunction must therefore be dissolved, and judgment will be entered as indicated above, with costs.

The counsel will prepare findings and conclusions in accordance with this opinion by the first day of the next term, to which time the entry of judgment is hereby deferred.